## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

**ELIZABETH WEATHERBY,**

      **Plaintiff,**

**v.**                                   **Case No.  2:11-CV-322-FtM-JES-DNF**
**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

Plaintiff filed an application for a period of disability and disability insurance benefits on July 5, 2007, alleging disability beginning May  24, 2006.  This claim was denied initially and upon reconsideration.   On October 14, 2009,  a hearing  was held in Fort Myers, Florida, before Administrative Law Judge Scott A. Tews [Tr. 23-43].  On November 13, 2009,  Administrative Law Judge Tews issued his decision finding  Plaintiff not disabled. [Tr. 23-43]  The Appeals Council denied Plaintiff's Request for Review on April 6, 2011,  [Tr. 2] making the ALJ's decision the final decision of the Commissioner. For the reasons set out herein, it is respectfully recommended that the decision be **AFFIRMED**.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

I.      **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

A.      **Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404,1511.

B.      **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)(citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.* "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)(citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, "view the record as a whole, taking into account evidence favorable as well as unfavorable

to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986)). However, the Court, "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled.  20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work.  If the claimant can still do his past relevant work then he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work.  If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion

through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of May 24, 2006 (Tr. 28).

At Step 2, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the lumbar spine, status post cervical fusion, right shoulder impingement, headaches, anxiety, and depression (Tr. 28).

At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4.

At Step 4, the ALJ found Plaintiff was able to perform the full range of light work except she could never climb ladders, ropes, or scaffolds and could perform simple routine, competitive, low stress repetitive tasks on a sustained basis over a normal eight hour work day (Tr. 33). The ALJ determined through Plaintiff's last date insured, Plaintiff was capable of performing her past relevant work as a food deliverer (Tr. 39).

## II.      REVIEW OF FACTS

On July 5, 2007, Plaintiff filed her application for disability insurance benefits alleging disability beginning May 24, 2006. The Decision of Administrative Law Judge Tews dated November 13, 2009, denied Plaintiff's claim for benefits (Tr. 26-39).

Plaintiff was born on July 1, 1964, and was 45 years old at the time of the hearing. Plaintiff has a high school education and three years of college (Tr. 50-52)  Plaintiff testified she had previously worked as a stock broker but did not currently have a license.  Plaintiff also worked six weeks at Chico's.  Plaintiff worked as a pizza deliverer while also working at  Home Depot  (Tr. 27).   Plaintiff  is insured for benefits through December 31, 2008 (Tr. 28).

Plaintiff alleges she is unable to sleep through the night, suffers from Charley horse spasms which are painful and cause back pain.  Plaintiff suffers from migraine headaches that occur at least once a month and last two to five days (Tr. 57).   Plaintiff takes the medication Relpax for her Migraine headaches.  Plaintiff alleges when she has a migraine headache she needs to lay down for several hours.  Plaintiff states she has constant lower back pain, neck pain and upper back pain.  Plaintiff states she has pain in her right arm when she tries to lift anything and has numbness in her right fingers and drops things (Tr. 55). Plaintiff advises she is unable to stand or sit for more than 15-20 minutes and sits in a "forward-leaning position" because it hurts to sit straight up.  Further, she has problems with her memory (Tr. 57, 60).

Plaintiff testified at the hearing that her shoulder was injured on January 4, 2005, at Home Depot while moving windows.  Plaintiff reported it to her supervisor  and Plaintiff continued to work.

Plaintiff was seen by Donn O. Fuller, M.D. on April 19, 2005, having been referred by Worker's Comp for evaluation of the injury to her right shoulder that occurred on January 4, 2005.  Dr. Fuller's notes reveal: " ... the patient has pain in the right shoulder and pain upon extremes of range of motion testing.  Strength is well maintained.  Majority of pain is

in the region of the subacromial space.  Skin, lymphatic, and neurovascular systems are

intact to the right upper extremity. Plaintiff was found to have "mild rotator cuff tendon

impingement with a tiny partial-thickness tear of the distal supraspinatus tendon but no full

thickness tear present".  Plaintiff was treated with a cortizone injection, advised to lift no

more than 10 pounds, and return in two weeks for a recheck (Tr. 409).

On April 29, 2005, Plaintiff was seen by Neil R. Schultz, M.D. , for an MRI.

Plaintiff underwent an MRI of her cervical spine because of low back pain and right leg

pain.  IMPRESSION: "Paracentral disc protrusion L5-S1, otherwise unremarkable study"

(Tr. 304).

Plaintiff returned to Dr. Fuller for a re-check after receiving a cortizone shot on May

3, 2005.  Plaintiff advised the shot only relieved her pain for about two days.  "She has pain

in the right upper trapezius area as well as down the right arm.  I am concerned this may be

coming from her neck.   It does not appear that this pain is originating from the shoulder

area". (Tr. 409).  Dr. Fuller advised he would contact Worker's Comp to arrange for a

neurologic opinion and thought Plaintiff should also have another MRI performed (Tr. 409).

On May 30, 2005, Plaintiff was again injured on the job at Home Depot.  Plaintiff

reports she was on light duty because of her shoulder but "pulled a special order of 12

doors".  Plaintiff states the doors were eight foot tall, four foot wide (sliding glass door

panels) with impact glass.  The doors fell on Plaintiff which she estimated at about 1,000

lbs.  (Tr. 51).  Plaintiff went to the emergency room at Cape Coral Hospital where she was

examined.  A limited lumbar series was performed and was found to be negative.

WORKING DIAGNOSIS: "Contusion to the back."  TREATMENT/PLAN: "Dilaudid and

Vistaril Intramuscularly here, as well as Vicodin on discharge" (Tr. 212-213).

On August 18, 2005, was seen by Jeffrey S. Henn, M.D. , for a neurosurgical consultation at the request of  Dr. Harris Bonnette and Worker's Comp.  Dr. Henn found that the MRI revealed "C5-6 and C-7 disk bulges with severe foraminal narrowing and some mass effect against the spinal cord itself".  Dr. Henn discussed with Plaintiff that this was "not an emergency and certainly one option is to continue with conservative management".  Further, Dr. Henn advised "continued physical therapy as well as the possible of cervical epidural injections and anti-inflammatory medications."  Plaintiff was advised if there were any change in symptoms "we may need to consider intervention at that time.  To my examination today (sic) I do not detect any specific weakness."  Plaintiff advised she would try conservative management and undergo the cervical epidural steroid injections.  Plaintiff was advised to follow up in 6-8 weeks (Tr. 241-243).

On January 24, 2006, Plaintiff returned to Dr. Schultz for a follow-up visit complaining of neck pain and upper mid thoracic pain.  Medical notes reveal that Plaintiff was to continue with physical therapy 3x weekly and that she was referred by her Workers' Comp carrier for physical therapy; that Plaintiff should consider a second neurosurgical consult if her symptoms continued despite receiving the injections, and continue with her medications (Tr. 251).

On April 24, 2006, Plaintiff was seen by Michael D. Lusk, M.D., of the Neurological Surgery Office, for severe right arm pain and neck pain.  Dr. Lusk advised Plaintiff would require surgery on her neck and she had developed a "frozen shoulder".  In a letter to Dr. Neil R. Schultz, Plaintiff's pain management physician, dated the same day, Dr. Lusk reiterated proceeding with cervical and lumbar MRI's, advising she would require surgery on her neck which appeared to be related to her injuries (Tr. 318).

On April 10, 2007, Dr. Lusk performed an Anterior Cervical Microdiskectomy and Plaintiff tolerated the procedure well.  The post-operative scan of Plaintiff's neck taken on April 18, 2007, and read by Peter L. Scott, M.D., revealed evidence of anterior fusion of C5-C7, grade 1 anterolisthesis of C4 on C5, and prevertebral swelling due to the postoperative change (Tr. 299).

On May 9, 2007, the notes of Dr. Lusk reveal "She is still miserable.  Her neck is better, but her main problem is the low back.  The MRI of 4/27/07 at LMR has not changed from the MRI of one year ago.  She basically has a chronic degenerative mild bulging disc at L5-S1 .  Respect to the question of whether she is a candidate for disc replacement, it is certainly possible, but I definitely would not recommend a laminectomy and fusion here".  Dr. Lusk recommended continuing with pain management "but there is nothing from a neurosurgical point of view at this time unless disc replacement might be considered" (Tr. 314).

On May 11, 2007, Plaintiff was seen by John B. Wilson, neurologist for an evaluation following a referral by Dr. Lusk (Tr. 349-351).  Dr. Wilson's letter to Dr. Lusk of the same date states Plaintiff is leaving to travel to Omaha, Nebraska and is there for a pain management evaluation (in order to refill her prescriptions, so she can travel).

Dr. Wilson found Plaintiff to be very uncomfortable and in pain.  IMPRESSION: "Chronic non-terminal pain with multiple areas of involvement including the cervical and lumbar spine status post extensive cervical discectomy".  PLAN: "Refill Dilaudid 4-6 hours for severe pain, Ambien for insomnia, Xanax for anxiety, Flexeril for muscle spasm".  "She will return in one month for revaluation and for adjustment of medication as necessary" (Tr. 348-350).

On June 11, August 10, and September 24, 2007 (Plaintiff's last visit to Dr. Wilson), Plaintiff still suffered from chronic pain, limited cervical range of motion, changed positions frequently and pain was not improved with Dilaudid and Valium (Tr. 342, 347). Plaintiff appeared to have lost weight, had weakness, numbness, imbalance, depression, anxiety, loss of energy, headaches and memory difficulties (Tr. 338).

On October 12, 2007, Dr. Kenneth Berdick M.D. completed a consultative examination report[1]. This report consists of two pages and is not addressed to anyone. Dr. Berdick reviewed Plaintiff's past medical history, family history, personal history and completed a physical examination. Dr. Berdick's assessment is as follows: " Plaintiff, despite her low back complaints, moved her lower back in a full range in all planes and grip strength, finger dexterity and gait are normal. She has no neurological deficits and repetitive muscle testing in the upper and lower extremities is likewise normal. There is no evidence of any inflammation and likewise there is no evidence of any joint swelling, erythema or warmth. She likewise appeared psychologically stable as she did respond appropriately to the examiner and the staff" (Tr. 308-309).

On October 15, 2007, Plaintiff returned to Dr. Lusk. Dr. Lusk opined that Plaintiff has the pathology to warrant back surgery and referred her to Dr. Mark B. Gerber (Tr. 311).

On November 18, 2007, Plaintiff was seen by Dr. Mark B. Gerber. Plaintiff was unable to elevate her right arm due to pain and had diffuse hypesthesia to pinprick in the right upper extremity and proximal hypesthesia in the right lower extremity. Dr. Gerber noted Plaintiff would possibly need a surgical intervention procedure (Tr. 330).

---

[1]     It is unclear from the record who requested this report and who was to receive said report.

Plaintiff was seen on November 26, 2007, by Claudia Zsigmond, a State agency psychologist referred to by the Office of Disability determinations for a disability evaluation. Plaintiff was given a prognosis and recommendation as follows: "Her prognosis is fair from a psychological perspective and her impairments appear to be primarily physical at this time". The evaluator recommends the following: "Obtain health insurance and resume appropriate medical care. In addition she might benefit from individual counseling to enhance coping skills". (Note: "Plaintiff supports herself on her workman's compensation"). DIAGNOSIS: "Adjustment disorder with anxiety, chronic; damaged spinal discs with residual affects, medical and mental health problems, lack of health insurance, unable to sustain employment at this time, present GAF score - 57". (Tr. 332-334).

On December 10, 2007, Shannon Smith completed a physical RFC Assessment for the Social Security Administration. Plaintiff was found to be able to lift 50 pounds occasionally, 25 pounds frequently, stand/walk 6 hours in an 8-hour workday; with unlimited push/pull capabilities. "Clmt ambulated with a normal gait. All joints, including the lumbar spine had full painless ROM. There were no sensory or reflex abnormalities" (Tr. 365). "There were no neurological abnormalities. Clmt retained 5/5 muscle strength in the UE and LE. Sensation was intact in all dermatomes. She ambulated with a slow and cautious gait. Right shoulder MRI was negative for any abnormalities" (Tr. 363)

On December 11, 2007, Martha Putney, Ph.D., completed a psychiatric Review Technique form at the request of the SSA. Plaintiff was found to have: "no mental impairment–CL is able to prepare meals, shop, do self-care, HH chores, manage finances, and drive as physical limitations permit". SOCIAL: "Mildly decreased–cl is able to be

cooperative and appropriate.  Logical/ coherent thought process, no halluc/delusions, no acute mental distress" (Tr. 367).

On February 29, 2008, Nancy Dinwoodie, MD., completed a psychiatric Review Technique form at the request of the SSA.  Plaintiff was found to "be cooperative and appropriate.  Logical/coherent thought process.  CPP: No impairment–cl reports that her memory is good, her ADLs are intact from a cognitive standpoint.  She has 3 years of college, indicating at least average IQ, which is adequate for moderately complex mental tasks.  CL has minimal decrease in B Criteria function associated with mental" (Tr. 380).

On March 31, 2008, Marshall Kessler, M.D.,  completed a physical RFC Assessment form at the request of the SSA.  Plaintiff was found to be able to "lift 20 pounds or less, frequently lift 10 pounds, stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour work day; with unlimited push and/or pull capabilities.  Claimant said to have drug seeking behavior.  At recon clmt's states she is now off all meds except Aleve and has excruciating LBP (lower back pain).   When seen 11/8/07 clm't had decreased cervical ROM due to prior cervical fusion, inability to lift right arm due to shoulder pain, RUE hypesthesia, LBP w/o radiation, negative SLR, steady gait and ability to heel/to/squat.  Mild RLE Hyperthesia" (Tr. 397).  DO noted that she appeared in pain but noted no problems answering questions.  Mental Ce revealed an Adjustment disorder with anxiety secondary to her physical problems.  Functional limits are related to her physical problems".  (Tr. 394).

## III.    SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

### A.    THE ALJ PROPERLY DETERMINED THAT PLAINTIFF WAS NOT LIMITED BY HER MIGRAINE HEADACHES

Plaintiff argues that the ALJ erred by failing to determine that she was functionally

limited by migraine headaches. (Pl.'s Br.) at 15-17. Plaintiff bases this allegation primarily on her subjective testimony at the hearing that she experienced migraine headaches at least once a month despite medication and that each headache lasted from 2 to 5 days (Tr. 57). (Pl.'s Br. at 16). A diagnosis or condition is relevant only to the extent that it affects a claimant's ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."); see also e.g., *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition.").

While there is evidence that Plaintiff has been prescribed medication for subjective complaints of migraine headaches, there is no documentation in the record to support the alleged frequency or severity of these headaches. Although Dr. Neil Schultz indicated that Plaintiff had been prescribed Relpax for migraine headaches, there is no evidence in these records that Plaintiff ever reported subjective complaints regarding migraine headaches during the relevant period since her alleged onset of disability; and Dr. Schultz did not include migraine headaches among Plaintiff's diagnoses (Tr. 217-18, 229-30). Moreover, Plaintiff specifically told Dr. Schultz in July 2006 that her headaches were controlled with medication (Tr. 217). *Chereza v. Comm'r of Soc. Sec. Admin.*, 379 Fed. Appx. 934, 940-41 (11th Cir. 2010) (where claimant reported depression and anxiety were controlled with medication, ALJ properly found no severe mental impairment). Although Plaintiff also claims that the ALJ did not consider nausea caused by migraine headaches, (Pl.'s Br. at 16), Plaintiff specifically denied experiencing nausea related to headaches when she saw Dr.

Gerber in November 2007 (Tr. 329). Given that the medical record demonstrates Plaintiff's migraine headaches are controlled with medication, she has failed to establish any functional limitations as a result of this condition.

**B.      THE ALJ PROPERLY DETERMINED PLAINTIFF'S RFC PERTAINING TO PLAINTIFF'S USE OF HER RIGHT ARM AND PERFORMING OVERHEAD TASKS ABOVE HER HEAD**

Plaintiff also argues that the ALJ failed to take into consideration the functional limitations resulting from her right shoulder impingement because he did not include limitations in Plaintiff's ability to lift overhead and reach (Tr. 17-20). In assessing Plaintiff's shoulder impairment, the ALJ noted that an MRI of the right shoulder performed in April 2007 revealed no evidence of rotator cuff tear, muscle edema, or labral tear (Tr. 35, 300). Additionally, there was no impingement of the acromioclavicular (AC) joint (Tr. 300).

The ALJ also considered treatment records from Dr. Donn Fuller, who treated Plaintiff for her shoulder pain and noted in June 2007 that she had well maintained strength and fairly good forward elevation (Tr. 408). In February 2008, Dr. Fuller reviewed an MRI of the shoulder, which showed apparent healing of the partial thickness rotator cuff tendon tears, no labral tear, no AC joint arthritis, and no impingement syndrome (Tr. 407). Dr. Fuller opined that Plaintiff's shoulder pain was originating from her neck rather than the shoulder (Tr. 407). Dr. Fuller concluded that Plaintiff did not have a permanent impairment of the shoulder and that she could "use her right shoulder normally as she elects with any work activity" (Tr. 407).

Plaintiff returned with complaints of shoulder pain in November 2008, but she reported that she was taking no pain medication (Tr. 405). Upon examination, Plaintiff had

good range of motion of the right shoulder and her strength was well maintained (Tr. 405). Plaintiff again complained of pain at a follow-up examination two weeks later.  However, there is no requirement that a claimant be symptom-free for the Commissioner to find a claimant not disabled.  *Rodriguez v. Bowen*, 857 F.2d 275, 278 (5th Cir. 1988) (The inability to work without pain and discomfort is not necessarily determinative of disability). The ALJ properly determined that Dr. Fuller's opinion was entitled to great weight (Tr. 38).

Plaintiff suggests that the medical evidence could have been interpreted differently, (Pl.'s Br. at 19-20); however, the ALJ is responsible for evaluating the medical evidence and determining Plaintiff's RFC.  20 C.F.R. § 404.1546(C); *Walker v. Bowen*, 826 F.2d 996, 1000 n.1 (11th Cir. 1987). In making this determination, the ALJ is charged with the duty to weigh the evidence and testimony, resolve material conflicts in the evidence and testimony, and determine the case accordingly. *Battle v. Astrue*, 243 Fed. Appx. 514, 523 (11th Cir. 2007); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). "[C]hoosing between conflicting evidence is a task peculiarly suited to the fact finder [that is, the Commissioner], and [the court] will not disturb such a determination on appeal." *Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986). Accordingly, the court should affirm the ALJ's finding of Plaintiff's RFC for a reduced range of light work.

### C.   THE ALJ'S PROPERLY FOUND AT STEP FOUR THAT PLAINTIFF CAN RETURN TO PAST RELEVANT WORK AS FOOD DELIVERER AS IT IS GENERALLY PERFORMED

Plaintiff's remaining arguments involve the ALJ's finding that she could return to her past relevant work as a pizza deliverer. (Pl.'s Br.) at 10-14. After determining Plaintiff was unable to perform a full range of light work activity, the ALJ obtained VE testimony (Tr. 67-

73). In classifying Plaintiff's past relevant work, the VE testified that Plaintiff's work as a

pizza deliverer was classified as a food deliverer, DOT code 299.477-010, and was light and

unskilled with a specific vocational preparation (SVP) time of 2 (Tr. 69-60). Plaintiff's other

work was semi-skilled or skilled and ranged from sedentary to heavy in exertion (Tr. 69).

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and

work experience retained the following RFC:

> Further assume that such an individual could work at a light
> exertional level as that is described In the Dictionary of
> Occupational Titles. Additionally assume that such an
> individual could not climb ladders, ropes, or scaffolds, and
> additionally, that such an individual would be limited to
> performing simple, routine, repetitive, low-stress repetitive
> tasks on a sustained basis over a normal eight hour workday,
> but in a stable work environment where there's no more than
> simple decision-making required. Could such an individual
> perform any of the claimant's past work?

(Tr. 71). In response to this hypothetical, the VE testified that Plaintiff could return

to her past relevant work as a food deliverer but not her other past relevant work (Tr.

72). The ALJ also asked the VE whether his testimony conflicted with the DOT, and

the VE stated that it did not (Tr. 73). Although the ALJ offered Plaintiff the opportunity to

cross examine the VE, Plaintiff did not question the VE regarding the requirements of the

food deliverer position. Instead, Plaintiff posed one question asking whether being late for

work at least three days a week would preclude the food deliverer position (Tr. 72). Relying

on the VE's testimony, the ALJ found that Plaintiff would be able to return to her past

relevant work as a food deliverer as this job is performed in the national economy (Tr. 38-39,

finding no. 6).

Although Plaintiff did not contest the VE's qualifications and posed only one question to the VE (Tr. 72-73), Plaintiff now argues that the ALJ committed reversible error by relying on the VE's testimony (Pl.'s Br. at 10-13). Specifically, Plaintiff asserts that the DOT indicates a food deliverer is a medium job rather than a light job. (Pl.'s Br. at 10-13). As previously noted, the ALJ specifically asked the VE if his testimony conflicted with the DOT, and the VE testified that it did not (Tr. 73). Moreover, Plaintiff did not question the VE about the conflict she has now identified (Tr. 72-73). Claimants "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT," and then present these conflicts as reversible error, when they were "not deemed sufficient to merit adversarial development in the administrative hearing." *Haas v. Barnhart*, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004); *Smith v. Astrue*, No. 5:09cv158/RS/EMT, 2010

Social Security Ruling (SSR) 00-4p imposes an affirmative duty on the ALJ to ask the VE if the evidence he provided "conflicts with the information provided in the DOT." SSR 00-4p, at *4. If the VE's testimony "appears to conflict with the DOT," the ALJ "will obtain a reasonable explanation for the apparent conflict." Id. As previously noted, the VE testified that there was no conflict (Tr. 73). Once the ALJ elicits credible testimony from the VE that no such conflict exists and affords Plaintiff a full opportunity to cross-examine the VE, the ALJ has no duty under SSR 00-4p to interrogate the VE further. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601,

Even if a conflict or inconsistency existed between the VE's testimony and the DOT, the Eleventh Circuit has indicated an ALJ still may rely on the VE's testimony. *Hurtado v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 793, 796 (11th Cir. 2011) (VE's testimony trumps any inconsistent provisions of DOT); *Jones v. Comm'r of Soc. Sec.*, 423 Fed. Appx. 936, 939 (11th Cir. 2011).

### D.      THE ALJ PROPERLY DETERMINED THAT THE POSITION OF FOOD DELIVERER HAS A REASONING LEVEL OF TWO

Plaintiff also takes issue with the VE's testimony that an individual limited to "simple routine . . . repetitive tasks" would be able to perform a job with a reasoning level of two. (Pl.'s. Br.) at 13-14. In support of this argument, Plaintiff relies on the DOT's definition that a reasoning level of two requires "carry[ing] out detailed but uninvolved written/oral communications." (Pl.'s Br.) at 13. While Plaintiff cites various decisions from within this district supporting her argument, (Pl.'s Br. at 13), she fails to acknowledge that other courts within this district, including this Court, have rejected this argument. In *Strickland v. Astrue*, this Court noted that a job with a reasoning level of two required "'simple, but uninvolved written or oral instructions.'" No. 2:10-cv-306-FtM-DNF, 2011 WL 4048985, at *9 (M.D. Fla. Sept. 13, 2011).  Additionally, this Court found that a limitation to performing "simple tasks" alone did not support a conclusion that a claimant was incapable of performing a position with a reasoning level of two.

In order to carry her burden of showing she cannot perform her past relevant work, Plaintiff must show not only that she cannot perform her past work as generally performed but also as she performed it. 20 C.F.R. § 404.1520(f); SSR 82–61; *Jackson v. Bowen*, 801 F.2d 1291, 1293–94 (11th Cir.1986). As Plaintiff described her work as a pizza deliverer, she

walked 20 minutes, stood 20 minutes, and sat for 5-6 hours with no climbing, kneeling,

crouching, or crawling and very little stooping (Tr. 156). She reached for boxes and also

handled, grabbed, and grasped big objects (Tr. 156). Plaintiff reported that she was allowed

to deliver one order at a time unless the pizzeria was very busy, never lifted over 20 pounds

and frequently lifted no more than 10 pounds (Tr. 156). She also folded boxes and cleaned

the stove (Tr. 156). These exertional requirements would not exceed Plaintiff's RFC for a

reduced range of light work. Accordingly, Plaintiff cannot carry her burden of showing that

she was unable to perform her past relevant work, either as she performed it or as generally

performed, prior to the expiration of her insured status on December 31, 2008.

## IV.     CONCLUSION AND RECOMMENDATION

In the instant case, the ALJ properly considered the relevant evidence and properly

performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence.

Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not

disabled within the meaning of the Social Security Act (Tr. 10-18).

Therefore, it is respectfully recommended that the decision of the Commissioner be

*AFFIRMED*.

In Chambers at Fort Myers, Florida this 10th day of August, 2012.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

**Notice to Parties**

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Copies:

All Parties of Record

Carol A. Avard, Esquire
John F.Rudy, III